UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at FRANKFORT

CIVIL ACTION NO. 08-60-GWU

PAMELA JANE MARTIN,                                        PLAINTIFF,

VS.                           **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.      Is the claimant currently engaged in substantial gainful activity?
        If so, the claimant is not disabled and the claim is denied.

2.      If the claimant is not currently engaged in substantial gainful
        activity, does he have any "severe" impairment or combination
        of impairments--i.e., any impairments significantly limiting his
        physical or mental ability to do basic work activities?  If not, a
        finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine
        whether the claimant's severe impairment(s) or combination of
        impairments meets or equals in severity an impairment listed

1

08-60  Pamela Jane Martin

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating

2

physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

3

08-60  Pamela Jane Martin

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

08-60  Pamela Jane Martin

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

5

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-60  Pamela Jane Martin

## DISCUSSION

The plaintiff, Pamela Jane Martin, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of cervical degenerative disc disease and borderline intellectual functioning.  (Tr. 21).  She also had "non-severe" depression and headaches. (Tr. 22).  Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Martin retained the residual functional capacity to do her past relevant work as an assembler, and therefore was not entitled to benefits. (Tr. 23-8).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion and also had the following non-exertional restrictions. She: (1) could occasionally climb ramps and stairs; (2) could occasionally reach in all directions; (3) needed to avoid vibrations; and (4) had a moderately limited ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  (Tr. 336-7).  The VE responded that the plaintiff could do one of her past jobs as an assembler, and in the alternative named other unskilled jobs which the plaintiff could perform and provided the numbers in which they existed in the state and national economies. (Tr. 337-8).

7

08-60  Pamela Jane Martin

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleges that she became disabled in November, 2004 due to neck pain radiating down her left shoulder and arm and a limitation of range of motion in the neck, as well as a history of strokes and chronic headaches, and a history of ulcerative colitis which had required the removal of her colon and had resulted in a continent ileostomy as well as in numerous surgeries for repair of hernias or for a "slipped nipple valve." (Tr. 63, 317-19). She was on anti-coagulation therapy to prevent further strokes. (Tr. 320). Fusion surgery had been suggested for her neck problem but she stated that she had to insert a tube in her stomach every two to three hours and it would be difficult if she was unable to move her neck. (Tr. 321). She had to intubate herself to void her bowels, and she was usually required to do this every two to three hours, the process taking 5 minutes to 30 minutes depending on what she ate or how her nerves felt at the time. (Tr. 330-1). Without surgery for her neck, she had undergone epidural blocks with temporary relief and used Hydrocodone for additional pain relief, although the latter medication made her drowsy. (Tr. 323). Regarding her mental condition, she testified to being depressed and having crying spells as well as panic attacks when under stress. (Tr. 331-2). She was on medication from her family physician which was somewhat helpful. (Id.).

8

08-60  Pamela Jane Martin

The ALJ found that the plaintiff retained the functional capacity to perform light level work, with the non-exertional restrictions previously described, based on the opinions of state agency reviewing physicians and psychologists who reviewed a portion of the record. (Tr. 167-73, 175-7, 194-6, 214-19).[1] The crux of the plaintiff's claim is that the ALJ lacked substantial evidence to support his finding that she could perform full-time, light level work based on an improper review of her credibility regarding her ileostomy and because he improperly rejected the opinion of a treating neurologist, Kerri Remmel, that she was unable to work.

On the first issue, while the ALJ found that there was no medical support for the plaintiff's need for intubation as frequent or prolonged as she alleged (Tr. 25, 340), a June 8, 2006 office note from Dr. Susan Galandiuk noted her patient's complaint that it sometimes took about an hour for her to intubate her pouch and commented that "this is not surprising."  (Tr. 296).  Although cryptic, the comment does provide medical support for the plaintiff's claim.  Therefore, it appears that this portion of the credibility review, at least, requires further consideration.

Regarding Dr. Remmel's opinion, the ALJ stated that it was not accepted because it was not supported by findings and was inconsistent with other credible medical evidence.  (Tr. 26).  Dr. Remmel, as the ALJ noted, treated the plaintiff for

---

[1] Although the physicians who reviewed the medical evidence, Dr. M. Allen Dawson and Dr. J. E. Ross, found the plaintiff's alleged limitations to be credible (Tr. 171, 218), it is not clear that they were aware of all of the plaintiff's allegations since the administrative hearing was conducted at a later date.

08-60  Pamela Jane Martin

daily headaches, a history of strokes, and severe cervical disc disease.  (Tr. 21).

She obtained objective testing, including an MRI of the brain which showed bilateral

old cerebellar infarcts with some chronic small vessel ischemic changes (Tr. 125-6)

and an MRI of the cervical spine showing disc bulges and moderate to severe

central canal stenosis and some cord edema (Tr. 123-4).[2]  Dr. Remmel opined on

two occasions that the plaintiff should be off work, citing both her headaches and

her cervical disc disease as "debilitating."  (Tr. 128-33).  The ALJ appeared to

discount her opinion in addition because "[n]o surgery was ever scheduled or

suggested."  (Tr. 21).  However, Dr. Remmel referred her patient to Dr. Todd Vitaz,

a neurosurgeon, who concluded that physical therapy and traction should be tried

initially but if they failed, he would consider a C4-5 and C5-6 cervical discectomy

and fusion.  (Tr. 140).  He noted that he would see the patient again in four weeks

and if she was no better, she would probably require surgical intervention although

she was at elevated risk for complications given her other problems.  (Tr. 141).

When the plaintiff returned, she reported that physical therapy had ultimately

caused her symptoms to flare up, and she felt worse.  (Tr. 135).  Dr. Vitaz reviewed

the MRIs, and noted that Mrs. Martin did have spondylosis at two levels with

compression of the nerve roots.  She sounded as though "pain has taken over her

---

[2]A subsequent cervical spine MRI on November 24, 2006, not available to Dr. Remmel, also showed a central disc herniation at C4-5 and C5-6 with moderate to marked bilateral forminal stenosis, as well as protrusions at other levels with little or no stenosis.  (Tr. 242-3).

08-60  Pamela Jane Martin

life." (Id.).  He felt that the risks of surgery were "extremely elevated" given her predilection to strokes.  (Id.).

Mrs. Martin elected not to proceed with surgery and eventually was referred to a physician at a pain institute for epidural steroid injections.  (Tr. 287).  It was noted that, in addition to the injections, she would need to switch back to Vicodin (another name for Hydrocodone) for pain control. (Tr. 289).  Several injections were made in 2006 and 2007 with only temporary relief.  (E.g., Tr. 264-6).  It is also noteworthy that Dr. Galandiuk had told the plaintiff that cervical surgery would represent a significant risk factor and appeared to believe that it would give the plaintiff difficulty with intubation due to limitation of neck motion.  (Tr. 296).

Although an ALJ may discount a claimant's credibility where there are "contradictions among the medical reports, claimant's testimony, and other evidence," Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997), it appears that the plaintiff had been given medical warnings of the risk of fusion surgery.  Discounting her testimony because no surgery was suggested or schedule was clear error.

Finally, the ALJ questioned the plaintiff's credibility because he felt her activities of daily living, described as attending to her personal needs independently, driving, watching television, doing light household chores, talking on the phone, reading, shopping, dating, visiting, dining out, and attending church, were inconsistent with an inability to work. (Tr. 25).  Not examined were her statements

08-60  Pamela Jane Martin

she would have to sit down after standing 20-25 minutes, that her stomach would swell whenever she walked, that she did not eat whenever she had to leave home, that she did not wash dishes, mop, vacuum, or take out garbage, and that housecleaning took all day.  (Tr. 80, 323-7, 330).  The plaintiff also received assistance for many everyday tasks from her sister.  (Tr. 84-5).

Consequently, due to all these factors, this is a relatively rare case in which the court finds insufficient evidence to support the ALJ's credibility determination. See Rogers v. Commissioner of Social Security, 486 F.3d 234, 248-9 (6th Cir. 2007).

The decision will be remanded for further consideration.

This the 10th day of June, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge